AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| KAN CHEN | ) |
| | ) |
| | ) |
| | ) |

Case No.

*CR 16-11-UNA*

15 - *73M*

_____
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 2015 until June 16, 2015___ in the county of ___New Castle___ in the

_____ District of ___Delaware___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 554 | Smuggling Goods from the United States |

**SEALED**

*unsealed*

2015 JUN 12 PM 1: 12

FILED U.S. DISTRICT COURT
DISTRICT OF DELAWARE
CLERK U.S. DISTRICT COURT

This criminal complaint is based on these facts:

See the attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Brian Maher, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___06/12/2015___

_____
Judge's signature

City and state: ___Wilmington, Delaware___

Hon. Mary Pat Thynge, Chief U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Brian Maher, being duly sworn, state as follows.

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed as a federal agent for approximately thirteen (13) years. I am authorized to investigate violations of laws relating to the export of controlled commodities and technology from the United States, including but not limited to violations of the Arms Export Control Act, the Export Administration Act, and the respective implementing regulations of both Acts. In the course of my assigned duties, I have conducted or participated in a number of investigations related to illegal exports, the smuggling of goods from the United States, and money laundering.

2.      The statements contained in this affidavit are based on my knowledge of the case, which has been derived primarily from conversations with other law enforcement officers, including but not limited to HSI Special Agent Mark Olexa ("SA Olexa"), who have detailed knowledge of the events and circumstances described herein. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, this affidavit does not set forth each and every fact learned by me or other Special Agents during the course of this investigation.

### EXPORT CONTROL LAWS AND REGULATIONS

3.      In furtherance of the security and foreign policy of the United States, the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, authorizes the President of the United States to control the export of arms, munitions, and implements of war, i.e., "defense articles." The

1

AECA and its attendant regulations, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120-130, require a person to apply for and obtain a license from the United States Department of State ("DOS"), Directorate of Defense Trade Controls ("DDTC") before exporting defense articles from the United States. Pursuant to the ITAR, all defense articles are identified by category on the United States Munitions List ("USML"). It is a crime for any defense article exporter to willfully export from the United States a defense article without first obtaining an export license from the DDTC.

4.     In general, except for items exclusively controlled for export and re-export by the Department of State, all items made, wholly or in part, in the United States, wherever located, are subject to the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774.    The Department of Commerce promulgates the Export Administration Regulations and maintains the Commodity Control List, which specifies the goods and technologies that require export licenses prior to shipment outside the United States.

5.     The Export Administration Regulations place limitations on the export of those goods and technology that the Secretary of Commerce deems could make a significant contribution to the military potential of other countries, could prove detrimental to the national security of the United States, or are contrary to foreign policy of the United States. For instance, the Export Administration Regulations control the export and re-export of "dual-use" items, that is, commercial items that also have a military or nuclear application, to foreign countries. With limited exception, the Export Administration Regulations prohibit any person from exporting or causing the exportation from the United States of dual-use items designated as Export Classification Control Number 0A985 and 0A987 which are controlled for crime control reasons,

2

to the Peoples Republic of China (PRC) without first having obtained an export license from the Department of Commerce.

6.     In 1990, when Congress passed legislation in the wake of the 1989 Tiananmen Square crackdown in China that reinforced the economic and diplomatic sanctions then President George H.W. Bush had implemented, it suspended (among other things) all export licenses of defense articles and dual-use items controlled for crime control purposes to China.  (P.L. 101-246 and 22 U.S.C. Section 2151).

7.     18 U.S.C. § 554 (Smuggling Goods from the United States) makes it a crime to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article, or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

## MONEY LAUNDERING STATUTE

8.     18 U.S.C. § 1956(a)(2)(A) (Laundering of Monetary Instruments) makes it unlawful to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent of promoting a 'specified unlawful activity.'"   Pursuant to 18 U.S.C. § 1956(c)(7)(B)(v), "specified unlawful activit[ies]" covered by the statute include the smuggling or export control violations listed above.

## SUMMARY OF INVESTIGATION

9.      Pursuant to this investigation, the investigative agents have determined the following:

a.      An individual identified as Kan CHEN ("CHEN"), believed to be operating out of China, is known to have purchased export-controlled night vision and thermal imaging rifle scopes from various U.S.-based internet sellers;

b.      CHEN is having the devices in question sent to an identified re-shipping business in Delaware;

c.      CHEN is subsequently facilitating the export of the devices in question from the United States to China without first having obtained the required license or written approval from either the Department of State, Directorate of Defense Trade Controls ("DDTC") or the Department of Commerce, Bureau of Industry and Security ("BIS");

d.      CHEN is undervaluing the shipments and unlawfully avoiding the filing of export information with the United States Government in order to avoid detection;

e.      CHEN is knowingly and willfully conducting the activity referenced above in furtherance of a scheme to violate multiple United States export laws; and

f.      CHEN is transferring money from China to the United States with the intent to promote the carrying on of the above violations of United States export laws.

10.      The focus of this investigation is CHEN's export, and attempted export, of sophisticated night vision and thermal imaging rifle scopes. These rifle scopes can be mounted on automatic and semi-automatic rifles and used for military purposes at night. As an example, one such scope CHEN purchased and attempted to export is the ATN ThOR 336 Rifle Scope, which is described by its manufacturer as "provid[ing] amazing image quality through total

4

darkness, fog or smoke," as being unaffected by "[d]arkness, camouflage or bright lights," and as being "ideal for nighttime hunting, force protection, border patrol, police SWAT and special operations." Below please find a photograph of the ATN ThOR 336 copied from the manufacturer's website advertising the sale of this piece of equipment.



Another example of a scope believed to be exported by CHEN is the Trijicon Advanced Combat Optical Gunsight ("ACOG"), which is described by its manufacturer as "a fixed power, compact riflescope with an illuminated reticle pattern for use in bright to low/no light" that "combin[es] traditional, precise distance marksmanship with CQB [Close Quarters Battle] speed" and for which "[e]very feature of its design was chosen for a single purpose: to provide increased hit potential in all lighting conditions." Below please find a photograph of the ACOG mounted on a rifle. This photograph has been copied from the manufacturer's website advertising the sale of this piece of equipment.



## CHEN'S FAILURE TO OBTAIN REQUIRED U.S. EXPORT LICENSES

11.      The United States Munitions List ("USML") is a list of categories of items that have been designated to be defense articles.  For example, Category XII entitled "Fire Control, Range Finder, Optical and Guidance and Control Equipment," includes "image intensification and other night sighting equipment or systems, specifically designed, modified or configured for military use; second generation and above military image intensification tubes... specifically designed, developed, modified, or configured for military use, and infrared, visible and ultraviolet devices specifically designed, developed, modified, or configured for military applications."  The export of items or services designated on the USML is regulated by the United States Department of State, Directorate of Defense Trade Controls ("DDTC").  On February 27, 2015, SA Olexa received notification from the DDTC that CHEN has never applied for or received an export license from the DDTC.

12.      Specific items controlled by the Department of Commerce (DOC) are identified on the Commerce Control List ("CCL"), which is found in Supplement No. 1 to Part 774 of the EAR.  These items are further classified through the use of Export Control Classification Numbers ("ECCN").  Each ECCN contains a commodity description, license requirements,

potential valid license exceptions and the reasons the item is controlled for export. DOC export licenses are processed and evaluated by the Bureau of Industry and Security ("BIS"), and records of export licenses and license applications are maintained with them. On May 15, 2015, SA Olexa received notification from the BIS that CHEN has never applied for or received an export license from BIS.

## CHEN'S CHINA-BASED EBAY, PAYPAL, AND GOOGLE ACTIVITY

13.     During the course of the investigation, pursuant to a subpoena, SA Olexa reviewed eBay account registration information on several of CHEN's known eBay accounts, to include the Internet Protocol ("IP") registration information and related activity logs associated with those accounts. The information indicates that CHEN appears to be operating those eBay accounts out of China. SA Olexa's review of both eBay and affiliated PayPal records indicated that CHEN utilizes the e-mail address of "woshichenkan@gmail.com." According to PayPal, one of CHEN's PayPal Account numbers is 1218768315072419705 and was created on April 26, 2013. The type of account is listed as "Personal – Chinese Verified by Card (China)." The PayPal records further show that CHEN provided PayPal with numerous addresses and phone numbers located in China.[1]

14.     Pursuant to a subpoena, Google provided, in pertinent part, the following subscriber information about the Google User, registered to the e-mail address "woshichenkan@gmail.com":

Name: 侃 陈   (Note: Translated as "Kan CHEN")
E-mail: woshichenkan@gmail.com
Created on: 2012/02/08-08:03:22-UTC
IP: 211.140.5.119, on 2012/02/08-08:03:23-UTC

---

[1] The phone numbers were assigned the China Country Code of +86.

Using a public IP lookup tool available on the Internet, I have determined that the IP address of 211.140.5.119, referenced as the IP address utilized at the time of the account's creation in 2012, is registered to China Mobile in Hangshou, China.

### CHEN'S USE OF A U.S.-BASED RESHIPPER THAT SHIPS ITEMS TO CHINA

15.     SA Olexa has reviewed information obtained during the course of this investigation, including but not limited to CHEN's eBay transactional records, which highlight his purchases from internet sellers. Those records confirm CHEN's purchase of night vision and thermal imaging rifle scopes.[2] The phone number provided by CHEN as his contact information to the internet sellers belongs to a company named CUL Express. CUL Express ("CUL") has offices in City of Industry, California, and at 150 Quigley Boulevard, New Castle, Delaware. The Delaware office location is a commercial structure with three loading docks and a large interior warehouse. During an interview conducted by HSI Agents on March 25, 2015, at the CUL office located in Delaware, a representative of CUL explained that the company provides a U.S.-based shipping address for customers located in China and accepts packages for those customers. CUL subsequently opens packages received at its facility and consolidates and/or ships those packages to a customer provided address in China. CUL does not facilitate any domestic (U.S.) shipments and only completes shipments to China.

16.     An Administrative Export Subpoena was served on CUL for records related to Kan CHEN, who is CUL customer # CN785. Multiple documents produced by CUL confirmed that CHEN possesses an account with the company and actively utilizes its services to forward items to China.

---

[2] In addition to rifle scopes, CHEN's eBay transaction records confirm that he has purchased thermal imaging cameras. I have been informed by BIS that these items require a license for export to the PRC, that there are not any license exceptions for PRC, and that no license was obtained.

17.        Based on my training and experience, I know that individuals who are purchasing and illegally exporting defense articles and CCL items from the United States typically use third parties to conceal their activities from law enforcement.

### CHEN COMMUNICATES WITH AN UNDERCOVER AGENT AND COMPLETES EXPORT COMPLIANCE FORM

18.        In late February, 2015, using his Gmail account, CHEN began exchanging e-mails with an HSI Undercover Agent (UCA).  Over e-mail, CHEN told the UCA that he wanted to purchase export-controlled night vision/thermal imaging weapon sights.

19.        Since that time, CHEN has purchased multiple such devices and facilitated payments from a PayPal account linked to his Gmail account (woshichenkan@gmail.com).  Thus far, CHEN has sent over $25,000 to the UCA via PayPal in payment for night vision and thermal imaging weapon sights procured from the UCA.  CHEN has also completed and forwarded the end-user compliance forms to the UCA via the aforementioned Gmail account.  These forms are ones that the UCA sent to CHEN and asked him to return prior to purchase.  The forms state that the item being purchased is export-controlled and cannot be exported from the United States without a license.  On those forms, CHEN falsely indicated the devices were for resale within the United States and would not be exported.  He also falsely indicated that he was a natural-born United States citizen and falsely provided the Delaware CUL address as his own.

20.        As indicated above, CHEN was asked by the UCA to complete and sign an "ITAR and EAR compliance form," an export compliance form, which states in pertinent part:

> I understand that the products, technologies and services made from my account with [Company Name Removed] are subject to one or more of the export control laws and regulations of the U.S. Government and that they fall under the control jurisdiction of either the Department of State's International Traffic in Arms Regulations (ITAR) or the Department of Commerce's Export Administration Regulations (EAR).

9

I understand that it is unlawful to export, or attempt to export or otherwise transfer or sell any hardware or technical data or furnish any service to any foreign person, whether abroad or in the United States (U.S.), for which a license or written approval of the U.S. Government is required, without first obtaining the required license or written approval from the department of the U.S. Government having jurisdiction.

I understand that, in the ITAR (§ 120.16), a foreign person means any natural person who is not a lawful permanent resident as defined by 8U.S.C. 1101(a)(20) or who is not a protected individual as defined by 8 U.S.C. 1324b(a)(3). It also means any foreign corporation, business association, partnership, trust, society or any other entity or group that is not incorporated or organized to do business in the U.S., as well as international organizations, foreign governments and any agency or subdivision of foreign governments (e.g., diplomatic missions). History: 59 FR25811, May 18, 1994; 71 FR 20534, Apr. 21, 2006.

I understand that I am responsible for compliance with any and all U.S. Government export controls and regulations and that, if I violate them, it could result upon conviction in severe criminal and civil penalties (including substantial fines, imprisonment, seizure of controlled products and technical data, and/or suspension/removal of export privileges) for my company and me.

I am purchasing the articles identified on the attached purchase order for use or resale in the U.S. only.

I understand that these items will not be exported, provided to foreign persons in the U.S. (including Foreign Embassies in the U.S.A.), or sold domestically for export by a third party (including U.S. Government agencies).

21.     On these forms, CHEN checked the box marked "Yes" to indicate that he is a natural born citizen of the United States.[3]

22.     On May 7, 2015, the UCA spoke to CHEN for the first time via telephone by contacting CHEN on his China-based phone number (assigned the China Country Code of +86). In highlighting a portion of the conversation, it is noted that CHEN (**BOLD**) stated in pertinent part:

---

[3] A review of DHS databases for the name "Kan CHEN" with the date of birth listed on CHEN's PayPal records did not locate any United States Citizen records. Also, please see Paragraph 44 below, which references CHEN's permanent resident registration card, which lists his name as "Kan CHEN" and states that he was born in Xiangshan County, Zhejiang Province, China.

UCA: Have you been able to get the night vision out through that Delaware address before?  Has that worked in the past?

**Kan CHEN: Yeah that worked, that, that worked before and, I, I, I, I, I shipped, I shipped nearly ah 20, 20 or 25 devices to China before and, and it's my first time ah the cops ah, the cops ah, ah, ah, detained my device and, and a, and a yeah.**

UCA:  Have you spoken, have you had a conversation with the people in Delaware, at that address?  Have they talked to you about that?

**Kan CHEN:  Yeah they told me, they told me, they told me that the cops, ah ah, retained my device and, and I'm, I was, I was, I didn't dare to tell you my last device because I am, I'm afraid that you won't ah send more devices, devices to me.**

UCA: Well, well I am sure you understand when I send you, you know I send you that form to fill out saying that you're not going to ship them, you know the ITAR Form, the I-T-A-R Form I send you?

**Kan CHEN: Yeah, Yeah**

UCA: That's, you know that's, I could get in a lot of trouble if I send you devices over there.  It's illegal for me to send them over there.  That's, that's the problem I have. Otherwise I would send you all the devices that you want but I can't send these devices to China.  You understand that correct?

**Kan CHEN: Yeah, I know.**

## CHEN'S ITAR CONTROLLED PURCHASES MADE THROUGH THE UCA

23.     CHEN has purchased a number of rifle scopes from the UCA, to include the below scopes.  On the dates listed below, the Department of State, Directorate of Defense Trade Controls ("DDTC") preliminarily informed SA Olexa that these rifle scopes are defense articles controlled within Category XII on the United States Munitions List and require an export license.

24.     Specifically, on or about March 19, 2015, CHEN purchased an ATN ThOR 336 3X-12X, (60Hz) thermal imaging rifle scope for $4,595 from the UCA.  A request was submitted by HSI to the DDTC, and on April 2, 2015, DDTC returned an initial or "First Level Review"

indicating this scope is a defense article controlled for export under USML Category XII(c) and consequently required a DDTC License for export to China.

25.      On or about March 24, 2015, CHEN purchased an ATN ThOR 640 2.5X-20X (30Hz) thermal imaging rifle scope for $6,895 from the UCA.  A request was submitted by HSI to DDTC, and on April 2, 2015, DDTC returned a First Level Review indicating this scope is a defense article controlled for export under USML Category XII(c) and required a DDTC License for export to the PRC.   Additionally, the investigative agents have located a Pre-Trial certification of the ATN Thor 640 2.5 (30Hz) dated April 25, 2013 issued by DDTC in another investigation.  This Pre-Trial certification also indicates that this model rifle scope is a defense article, Category XII(c).

26.      On or about April 4, 2015, CHEN purchased an IR Defense – IR Patrol LE100 19mm Thermal Monocular 640x480 for $4,895 from the UCA.  A request was submitted by HSI to the DDTC, and on June 4, 2015, DDTC returned a First Level Review indicating this scope is a defense article controlled for export under USML Category XII(c) and required a DDTC License for export to China.

27.      On or about April 12, 2015, CHEN purchased an Armasight Zeus 640 2-16x42 (30HZ) thermal imaging rifle scope for $4,995 from the UCA.  A request was submitted by HSI to the DDTC, and on June 4, 2015, DDTC returned a First Level Review indicating this scope is a defense article controlled for export under USML Category XII(c) and required a DDTC License for export to China.

28.      On or about May 13, 2015, CHEN purchased an IR Defense – IR Patrol M250 Thermal Monocular for $5,695 from the UCA.  A request was submitted by HSI to the DDTC, and on June 4, 2015, DDTC returned a First Level Review indicating this scope is a defense

12

article controlled for export under USML Category XII(c) and required a DDTC License for export to China.

Below please find a summary of the purchases made by CHEN from the UCA as detailed above:

| Purchases From UCA | Date of Payment to UCA | Item Description | Export Control | Payment Received From | Gross Amount |
|---|---|---|---|---|---|
| Purchase 1 | 3/19/2015 | ATN ThOR 336 3X-12X (60Hz) Thermal Imaging Rifle Scope | STATE DEPT/USML | Kan CHEN via Paypal | $4,595.00 |
| Purchase 2 | 3/24/2015 | ATN ThOR 640 2.5X-20X (30Hz) Thermal Imaging Rifle Scope *(Note: Payment for device split into 2 payments)* | STATE DEPT/USML | Kan CHEN via Paypal | $4,999.00 |
| | 3/25/2015 | ATN ThOR 640 2.5X-20X (30Hz) Thermal Imaging Rifle Scope | STATE DEPT/USML | Kan CHEN via Paypal | $1,896.00 |
| Purchase 3 | 4/4/2015 | IR Defense – IR Patrol LE100 19mm Thermal Monocular 640x480 | STATE DEPT/USML | Kan CHEN via Paypal | $4,895.00 |
| Purchase 4 | 4/12/2015 | Armasight Zeus 640 2-16x42 (30HZ) Thermal Imaging Rifle Scope | STATE DEPT/USML | Kan CHEN via Paypal | $4,995.00 |
| Purchase 5 | 5/13/2015 | IR Defense – IR Patrol M250 Thermal Monocular *(Note: Payment for device split into 2 payments)* | STATE DEPT/USML | Kan CHEN via Paypal | $1,695.00 |
| | 5/14/2015 | IR Defense – IR Patrol M250 Thermal Monocular | STATE DEPT/USML | Kan CHEN via Paypal | $4,000.00 |
| | | | | | **TOTAL $27,075.00** |

## CHEN ATTEMPTS TO EXPORT EAR AND ITAR CONTROLLED ITEMS TO CHINA

29.     On April 27, 2015, while serving an Administrative Subpoena on CUL at 150 Quigley Boulevard for export records related to CHEN, SA Olexa was alerted by CUL representatives that CHEN currently had a package ready to be re-shipped to him at an address in China he provided through his CUL account. Since the export of this item was imminent, this shipment was inspected, and one (1) ATN ThOR 336 4.5X-18X (60Hz) Rifle Scope was located

inside the package.  It is noted that in preparation of shipping the item to China, through his CUL account, the CUL representative informed SA Olexa that CHEN provided CUL with the necessary shipping information.  This information included CHEN falsely labeling the contents as a "Sony player" and falsely undervaluing the item as $100, when this particular item has a true value in excess of $5,000.  Because SA Olexa knows from his training and experience that rifle scopes generally require a license for export to China, the package was detained pending a license determination from the DDTC. A request was submitted by HSI, and a First Level Review was returned on May 27, 2015, indicating this item is a defense article controlled for export as a USML Category XII(c) and required a DDTC License for export to China.

30.     On April 28, 2015, a second package addressed to Kan CHEN was located at CUL at 150 Quigley Boulevard.  Based upon the facts related to the April 27, 2015, detention, this package was inspected and one (1) Armasight Orion 5X Rifle Scope was located.  Because SA Olexa knows from his training and experience that rifle scopes are generally controlled for export from the United States, this item was detained pending a license determination from the DOC.  On May 19, 2015, BIS completed a license determination confirming definitively that the Orion Rifle Scope is an item subject to the EAR and classified under Export Classification Control Number (ECCN) 0A987.a.  Items classified under this ECCN require a license for export to China.  An OEE Special Agent with knowledge of the facts of the investigation concluded that no valid license exceptions were available to authorize this shipment.[4]

31.     On May 8, 2015, a third package addressed to Kan CHEN was located at CUL at 150 Quigley Boulevard.  Based upon the facts related to the previous detentions, as well as the

---

[4] Also on April 28, 2015, a package addressed to Kan CHEN was located at CUL at 150 Quigley Boulevard, was found to contain eight (8) Taser Strikelight Stun Flashlights.  These items were detained and on May 20, 2015, were determined by BIS to require a license for export to China (ECCN 0A985).

fact that CUL representatives stated that CHEN currently had a package ready to be re-shipped to an address in China provided through his CUL account, this package was inspected and one (1) Leupold Mark AR MOD 1 4-12x40 rifle scope was located. Because SA Olexa knows from his training and experience that rifle scopes are generally controlled for export from the United States, this item was detained pending a license determination from the DOC. On May 19, 2015, BIS returned a license determination definitively stating that this item is controlled for export under the EAR by ECCN 0A987.a. With very limited exception not relevant here, items classified under this ECCN require a license for export to China.

32.     On May 8, 2015, a fourth package addressed to Kan CHEN was located at CUL at 150 Quigley Boulevard. Based upon the facts related to the previous detentions, this package was inspected and one (1) Night Optics D-750 rifle scope was located. Because SA Olexa knows from his training and experience that rifle scopes are generally controlled for export from the United States, this item was detained pending a license determination from the DDTC. A request was submitted and a First Level Review was returned on May 19, 2105 indicating this scope is a defense article controlled for export under USML Category XII(c) and required a DDTC License for export to China.

Below please find a summary of the items detained as detailed above:

| Date Detained | Item Description | Export Control | Approximate Value |
|---|---|---|---|
| 04/27/2015 | ATN ThOR 336 4.5X-18X (60Hz) Thermal Imaging Rifle Scope | STATE DEPT/USML | $5,300 |
| 04/28/2015 | Armasight Orion 5X Rifle Scope | DEPT OF COMMERCE/CCL | $500 |
| 05/08/2015 | Leupold Mark AR MOD 1 4-12x40 Rifle Scope | DEPT OF COMMERCE/CCL | $450 |
| 05/08/2015 | Night Optics D-750 Night Vision Rifle Scope | STATE | $5,700 |

| | | DEPT/USML | |
|---|---|---|---|
| | | | **TOTAL $11,950** |

## E-MAIL SEARCH WARRANT OBTAINED FOR CHEN'S GMAIL ACCOUNT

33.    On April 29, 2015, a federal search warrant (case no. 15-65M) was issued in the District of Delaware and subsequently served on Google covering any and all accounts relating to screen name or email address "woshichenkan@gmail.com," known by investigators to be utilized by CHEN.

34.    An initial review of the search warrant results found evidence indicating that CHEN has been purchasing night vision equipment from a number of U.S.-based vendors. CHEN has also been providing those U.S.-based vendors with U.S.-based shipping addresses, specifically addresses affiliated with re-shippers. Based on my training and experience, this appears to be an attempt to hide the ultimate destination for the shipment, China, from those vendors in order to facilitate and further his scheme to violate U.S. export laws. SA Olexa also found evidence indicating that when a vendor suspected the address was a re-shipper and informed CHEN of its suspicion, CHEN cancelled the order.

35.    For example, on September 23, 2014, CHEN responded to an inquiry concerning his order to purchase an ATN Thor 3201x 324x256, 19mm, (30Hz), 25 Micron thermal imaging rifle scope from the U.S.-based vendor, Optics Planet. As part of the ordering process for this rifle scope, CHEN filled out and submitted an "ITAR Compliance Certification" on September 17, 2014, on which he listed the customer name as "KAN CHEN DTFZ" and his address as CUL Express's address, "150 Quigley Boulevard CN785." The e-mail stated:

> Hello,
>
> 1) Who is the end user of the product(s) you have ordered?
> **KAN CHEN DTFZ.**

16

2) What is the end use of the product(s) you have ordered?
**For personal use.**

3) Where is the final destination of the product(s) you have ordered? (Please respond with a city and country)
**New Castle, United States.**

4) Why was this order submitted with international billing information? **Because my friend paid for it and his credit card was issued by Chinese bank.**

5) Why does it appear that your order is being sent to a freight forwarder? **My friend will receive the parcel for me and he's working there.**

36.     On September 23, 2014, in addressing CHEN's response above, Optics Planet sent CHEN the following e-mail:

Greetings,

Thank you for your email.

In accordance with US Export Control Laws and Regulations, US Companies cannot ship ITAR regulated products outside the physical territory of the United States without proper licensing. At this time, we are unable to apply for the required license. Please note your order has now been canceled, and your payment has been voided.

Our company is unable to assist in the purchase, sale or export of any regulated products that fall under the Export Administration Regulations (EAR) or International Trade and Arms Regulation (ITAR). To ensure compliance with these laws, our company will not sell regulated products to domestic customers who intend to export these items.

We apologize for any inconvenience this review or our cancellation has caused. Understand these actions were taken to protect our Company, our Manufacturers and our Customers from any export deemed illegal by the US Department of Commerce and/or US Department of State.

Thanks again for your order and cooperation with our review process.

For more information about our restrictions, please be sure to review our FAQ page, http://www.opticsplanet.com/restrictions-faq.html.

If you have any additional questions or concerns, please do not hesitate to ask.

Best regards,

37. In addition, an email sent to the subject's Gmail account, dated January 8, 2015, from another vendor (from Amazon.com), Eurooptic LTD, was located. The email stated:

Thank you for purchasing an item from our amazon store. Before we can ship this to you I need more information about the address. Unfortunately this address looks like a freight forwarding service, which we are not allowed to send a rifle optic under US law. Please advise.

38. On January 9, 2015, CHEN replied from his Gmail account to the Eurooptic LTD email referenced above and stated: "Please cancel my order. Thank you!" Also on January 9, 2015, an e-mail was sent to CHEN's Gmail account that documented a refund of $1,726.35 for a Trijicon Advanced Combat Optical Gunsight (ACOG) rifle scope that was the subject of this transaction.

39. Agents located an order confirmation, dated January 22, 2015, from Amazon to CHEN's Gmail account for one (1) ACOG rifle scope with a payment of $1,499.95. A subsequent Amazon e-mail, dated January 23, 2015, served as the shipping confirmation for this order, and indicated that the ACOG was shipped to Kan CHEN at 150 Quigley Boulevard.

40. Agents located another order confirmation, dated February 9, 2015, from Amazon to CHEN's Gmail account for one (1) ACOG rifle scope with a payment of $1,770.66. A subsequent Amazon e-mail, dated February 13, 2015, served as the shipping confirmation for this order and indicated that the ACOG was shipped to Kan CHEN at 150 Quigley Boulevard.

41. Agents located an additional order confirmation, dated February 9, 2015, from Amazon to CHEN's Gmail account for five (5) ACOG rifle scopes with a payment of $8,853.30.

18

A subsequent Amazon e-mail, dated February 13, 2015, contained the shipping confirmation for this order and indicated that the ACOG was shipped to Kan CHEN at 150 Quigley Boulevard.

42.     On May 19, 2015, BIS completed a license determination confirming the ACOG Rifle Scope is an item subject to the EAR and classified under Export Classification Control Number (ECCN) 0A987 and required a license for export to China.  An OEE Special Agent with knowledge of the facts of the investigation concluded that no valid license exceptions were available to authorize this shipment.

### KAN CHEN'S IDENTITY

43.     CHEN's e-mail address, woshi**chenkan**@gmail.com contains within it the name "Kan CHEN."  The Google account associated with that account is subscribed to 侃 陈, which translates to "Kan CHEN."  eBay records also reflect the name "Kan CHEN," and over the telephone, CHEN confirmed to the UCA that he was "Mr. CHEN" and that the UCA could address him as "Kan."

44.     Moreover, agents located an attachment sent from CHEN's Gmail account on December 5, 2013, which was subsequently translated and which provides biographical information on CHEN.  That attachment was determined to contain CHEN's permanent resident registration card, which lists his name as "Kan CHEN" and states that he was born in Xiangshan County, Zhejiang Province, China.[5]  In addition, that attachment contains a significant portion of a "Sanya University" Diploma for Kan CHEN, which has a photograph affixed.

45.     Agents have also reviewed the Facebook account for CHEN that is directly linked to his known Gmail account.  A review of CHEN's Facebook account shows that he listed his

---

[5] This permanent resident registration card also lists CHEN's date of birth; that date of birth matches a date of birth listed within CHEN's PayPal records, which were also obtained in the course of this investigation.

educational background at the "Hainan University Sanya College, China." The photograph of CHEN recovered on the aforementioned diploma has been compared with the photograph posted of CHEN on the Facebook account, and they appear to be the same individual.

## CONCLUSION

46.     Based on all of the foregoing information, I assert that there is probable cause to believe that CHEN knowingly and willfully received, concealed, bought, sold, or facilitated the transportation, concealment, or sale of merchandise, articles, or objects, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States in violation of 18 United States Code Section 554; attempted to export defense articles without first obtaining the required license from DDTC in violation of 22 U.S.C. § 2778; and knowingly and willfully attempted to export DOC-controlled commodities without first obtaining a license from the Commerce Department in violation of 50 U.S.C. §§ 1701-1706 and the Export Administration Regulations. Moreover, there is probable cause to believe that on (7) occasions, CHEN has transferred money from China to the United States with the intent of promoting these illegal activities.

## REQUEST FOR SEALING

47.     Since this investigation is ongoing, disclosure of the warrant, the application for a warrant, this affidavit, and the criminal complaint would jeopardize the progress of the investigation.   Accordingly, it is further requested that the Court order that all documents in support of this criminal complaint, including the affidavit and arrest warrant, be SEALED until further order of the Court.

Brian Maher, Special Agent
Homeland Security Investigations

Sworn and subscribed before me
this 12th day of June 2015.

United States Magistrate Judge

21